Lovsky. Let your friend get settled here. Good morning, Your Honor. May it please the Court. My name is Susan Glovsky on behalf of the Millipore Party. A reasonable jury could find that the accused AllPure TakeOne device has a removable, replaceable transfer member. I ask that this Court agree, and if it does, the District Court's decision that the TakeOne device does not infringe Claim One should be reversed. That is because the sole basis for the District Court's grant of summary judgment was its finding that the accused AllPure TakeOne device lacks at least one removable, replaceable transfer member. Given that, I have a process question. How can you even raise the other limitations in this appeal? Because the District Court did find there was no literal infringement. Right, but it denied summary judgment with respect to DOE, so the District Court did not find that the accused devices didn't practice that limitation. So as you just said, the sole basis for the final judgment was the absence of the transfer member limitation. So there's nothing to appeal with respect to the other claims. And if this Court wishes to reverse and send us back for trial, we would be quite satisfied, Your Honor. I would suggest, though, that it would be a return to the District Court for a potential trial that does not have the adequate basis for trying the case, because the District Court did reach the wrong conclusion on literal infringement. We should go back to trial and trial. It's just like any appeal. You can't come up here and appeal the grounds for the final judgment and then say, as long as we're here, let's tell the District Court, with respect to every evidentiary issue it might have made or every denial of summary judgment that it might have made, we need to go back and tweak all those things so that we don't waste time going back. That's nice, but we don't have jurisdiction to do that. And, Your Honor, as I said, if the only decision today is to go back to try the case, we would be quite satisfied. Okay. Turning to the removable or replaceable transfer member issue, the District Court's non-infringement decision should be reversed, because a reasonable jury could conclude that there is literal infringement of the removable or replaceable transfer member, and because a reasonable jury could find that there is infringement under the Doctrine of Equivalence. As for the Doctrine of Equivalence, we submit that there are underlying questions of fact as to whether the differences are insubstantial, as well as questions of fact as to the function, way, result, and particularly the threshold factual question that the District Court resolved, but should have been resolved by a jury, as to what the function of the removable or replaceable transfer member is for the function, way, result test. This Court has determined that where there are disparate functions, there is a question of fact for the jury, and we say that this is exactly that case. There are disparate functions to be resolved. The District Court properly construed the part of the claim 1, which is at least one removable, replaceable transfer member. He construed it as at least one transfer member that can be removed from the magazine part of the device, and replaced with at least one removable, replaceable transfer member. I'm having a little trouble understanding it. Maybe this is more in line with little infringement, but the Take 1 device is a disposable sampling device, and it no longer keeps a sample bag that can be removed, right? I guess in light of that, I'm having a hard time seeing how at a minimum, little infringement can be achieved here. Your Honor, the closed system, that is the focus of Claim 1 and the device that's disclosed in the patent, is the system that goes from the container, which is like a bioreactor, or could be a bioreactor, to the bag, which is the sample bag. The needle goes into the needle. The fluid travels through the device, through a hose, into the bag, and that sample remains in that closed system until the sample bag is cut off and taken for analysis. The part that we're focusing on here is the area, and if I could, Your Honor, I'd like to refer the Court to page 2289 of the Joint Appendix, which has photographs of the sample bag and photographs of the device. It also appears in the reply at page 6. Now in photograph A, the District Court did not take issue with whether all the structure of the transfer member was there. The only question was the removability of the transfer member, and he focused on the wall of the transfer member. Photograph A shows the device fully assembled. Photograph B shows the transfer member, which is the holder 150, the bellow shaped part 165, the self-sealing membrane portion 166, and the needle 170. The only thing that happens when the device has completed its entire process of sampling is that this transfer member, which is 150, 165, 170, and 166, shown at the top of the photograph, at the bottom you see the number 135 for the magazine part, and this whole area around the needle that goes through the magazine part is the area that is the focus of the removable replaceable transfer member, and that is the area that would be exposed. It is not the closed system going from those needles all the way back to the sample bag. What about the seal, though? The lower court, if you look at the transcript of the proceeding, the lower court really zeroed in on the fact that you are trying to equate removable, which contemplates removable in its entirety, and you are trying to say that if it can be disassembled, that somehow that constitutes the same thing, but don't you have a problem with respect to the way that you have claimed this? The way that it is claimed is that it has a removable replaceable transfer member, which comprises a holder, a bellows-shaped part, a... What is the bellows-shaped part? The bellows-shaped part, Your Honor, is 165, and if I may... Doesn't the claim require the membrane to be at the end of the bellows-shaped part? Yes, Your Honor, and if I may... You don't have a number on that, but the second white part is between the bellows-shaped part and the membrane. So the magazine part is between the bellows-shaped part and the membrane. At an end was that claim term that we had addressed initially with Judge O'Malley as to whether this court has jurisdiction to resolve what that means, but what is happening is that the bellows-shaped part travels with that needle, and it is providing a seal for that upper part of the area around the needle, so that if any liquid drips off the end of the needle, it would not travel upward into that holder. The septum, or the self-sealing membrane portion, is on that metal, and the claim is directed to a self-sealing membrane portion and a bellows-shaped part, and those structures are there. Now, what we explained in the district court when it comes to the... I'm not following what you're telling me. Are you basically telling me that the construction is wrong and that we should be applying that construction? Because I don't see how this membrane is at the end of the bellows-shaped thing. If that's the right construction, then this doesn't seem to be infringing. And, Your Honor, it is at an end, because when it is traveling, it is at an end of the bellows-shaped part. If we could direct our attention to a different depiction of it, which is in the reply at page 4, and it's also in the appendix at 2291, but it's not annotated. The septum, or the self-sealing membrane portion 166, is shown there, and on the right, the bellows-shaped part is deformed, and the self-sealing membrane portion is at an end of the bellows-shaped part. I don't see how this picture helps you. Isn't the picture on the right 165 is the bellows-shaped part? Correct, Your Honor. How is 166 at the end of that? There's still a bunch of space between the two of them, even when it's extended. Because there's no requirement that it be at an end attached to it. Just as a house is at an end of a street and it doesn't have to touch the street, this is at an end. It's not on the side or on the top. How do you interpret the Lower Port language in its claim construction that the seal and the bellows-shaped portion must be integral to one another? And, Your Honor, that is where we consider the district court to have made an error, literally. But he did find that there was a doctrine of equivalence, and that a reasonable jury could find that sealing attached at an end of performs the same function and way and result, and therefore could be found to infringe under the doctrine of equivalence. But under your little infringement argument, are you complaining about the claim construction or complaining about the application of the claim construction? I am complaining about the application of the claim construction, the construction of at an end, because interiorly formed is saying that the two are sealingly attached to each other. The bellows-shaped part is sealingly attached to the self-sealing membrane portion, and there is that sealing attachment via the walls of the membrane portion, which I think gets back to an earlier part of our discussion. How can you have that sealing attachment of the bellows-shaped part to the self-sealing membrane portion, whether it is via the walls of the membrane part, of the magazine part, I apologize, number 135. Do you believe, in your brief, where you argue that the claim construction was wrong? We do not argue that the claim construction was wrong, Your Honor. What we say is that the claim construction requires the membrane to be at the end of the bellows shape. It is not at the end of the bellows shape. That is not what the district court found. The district court found that under the doctrine of equivalence No, I am not talking about the doctrine of equivalence, Your Honor. I am talking about the literal infringement. And what the district court did is to resolve through, under the guise of the claim construction, the district court resolved issues of fact for the jury. And I point to PPG Industries and Wilson Sporting Goods, which we argued in our brief, that the district court should not make decisions as to claim construction that remove the factual issues of the jury. And it is up to the jury I am sorry, I am not following that at all. Are you saying that the district court's claim construction was wrong? The district court conducted claim construction and made a decision in October of 2012 That is really a yes or no question. Is this claim construction wrong or not? And did you make that argument in your brief? We made the argument in our brief that what the district court did was to go What the district court did, and this is in our arranged library, is it went to the In our principal brief, I apologize, at page 53, With respect to the limitation that the membrane portion be formed or attached at an end of the balance part, the district court improperly narrowed the construction. So there was an initial construction that we considered quite appropriate. And what the district court did in the summary judgment decision was to narrow that construction upon addressing literal infringement of the limitation by the take one device. The district court determined that a requirement of direct connection is imposed, however, by the limitation that the membrane portion be formed or attached at an end of the balance part. Now, one of the problems with that, your honor, is that what the district court did is took the construction that again we considered totally fine, the membrane portion formed or attached at an end of the balance part, and instead of dealing with the term that was in the claim and in the construction, interiorly formed, which was one part of the claim, and at an end, which was a different part of the claim, the court put those two together and made it formed at an end. So it was interiorly formed, which means on the inside of the device, and it was at an end, which means at an end like at the end of a street, which a jury could determine includes this device literally and the district court determined includes this device under the doctrine of equivalence. But then changed it to formed at an end. Formed doesn't go with at an end. Formed is in a different part of the phrase. It goes with what the claim says, but that's what the district court found was not present. Can I just move, your time has expired, but we'll give you some rebuttal time, but I just wanted to spend a couple minutes on the question of prosecution history estoppel with regard to DOE, because notwithstanding that the district court went kind of in another direction, it seems to me that this is a very strong case of prosecution history estoppel given the amendments to the claim. So you want to respond to that briefly? Is that with respect to the removable, replaceable transfer? Yes. The claim as originally presented, claim one, said at least one transfer member, and there was some additional language, whereas the transfer member is removable for replacement thereof after use. That is the limitation that the district court finds is not present upon amendment, which is at least one removable, replaceable transfer member. Well, it originally said at least one transfer member in claim one, whereas the transfer member is removable for replacement thereof after use. And it is our position, and the district court did not have to address it because of the finding of no infringement, that there was no narrowing of the claim. In fact, if anything, that language was broadened to say at least one removable, replaceable transfer member. Now, there are additional bases for finding no prosecution history estoppel if that's not satisfactory, including claim one as originally presented, which said at least one transfer member, whereas the transfer member is removable for replacement thereof after use, was not the subject of the rejection. That was satisfactory to the examiner. What happened was the examiner said that claim four would be allowable if written in independent form. And so limitations including all of the intervening claims. Four was dependent on three, was dependent on two, was dependent on one. Claims one through four were rewritten in independent form as claim one. And the change that was made was a linguistic change from at least one transfer member, whereas the transfer member is removable. But that wasn't the only change. It says removable, replaceable transfer member, but it also says comprising a holder, a seal for sealing said aperture, a hypodermic needle having a tip that's a needle supported within the holder. In other words, you've defined very specifically what the transfer member is, and the lower court concluded that that transfer member has to have all of those elements even once removed. And it does have all of those elements even once removed. If the court could look at photograph B, all of those features are there. What the district court found was that when the transfer member is removed, there's something left behind, which the district court contended Millicorp indicated was part of the seal. But in fact, what we said was that the walls of the magazine part, and the magazine recall is for removable procurement. I'm still a little confused. Picture B, that's the whole device, right? Picture B is the device with the transfer member removed from the magazine part. But where is the transfer member in this? The transfer member is the holder 150 on the left, the bellows-shaped part 165, the needle 170, and the self-sealing, the 166. But that's not worth a single unit. Your Honor? It sounds like you're describing their whole device is a transfer member, but that means that there's nothing removable from it. The transfer member is not the magazine part. And so in the device, the transfer member is removable from the magazine part. And I think what's really important, Your Honor, is to look at the claim and recognize that it's a divided claim. Wait. The magazine part is. So you're saying everything in this picture is the transfer member except 135. But the problem having been is that the transfer member is not a transfer member. It's all the stuff on the left side of the picture plus 166. And Your Honor, I think what's really important in looking at this claim is. Can you just answer his question? There are some additional items that are removed from the magazine part in addition, such as the flange, the metal piece. But the answer to my question is that the transfer member has to be all this stuff on the left, 150, 165, 170, plus 166 on the right. Correct, Your Honor. How is that a removable transfer member since it's not together? Because, Your Honor, in looking at photograph A, that's what's being claimed. The claim is directed to a device. And photograph A shows that device ready for use. And when you look at that device, you then assess, is it a device as claimed? And that device has to have certain structure. I don't see how that remotely comes close to what you have in your patent, which is you have a big device and then you have a removable transfer member that you can take out of it as a single piece that has all of these different parts as a single piece. Because, Your Honor, I don't see anything in Claim 1 that requires a single piece. It has to be removable. And recall that in the second part of the claim, which is the fastening at least one transfer member. That nowhere says removable as one piece. It says you have to have a device that works. It has to have at least one removable replaceable transfer member. It has to work. It has to transfer a medium into and out of the container. But it doesn't say when you take it apart and take the transfer member out. And by the way, that the device that's in the patent would have to be unscrewed in order to get that transfer member out. That device, once you take that transfer member out that's shown in the patent, that can no longer introduce a withdrawal medium. It can no longer seal an aperture. There are lots of things in this claim that can no longer be done. So I would submit, Your Honor, that there's nothing in this claim that calls for a contiguous transfer member. All that has to happen is that it be removable. And we've shown in photograph feed that it is. All right. I have one last question that's kind of going to let me ask. And I want to go back to the prosecution history stop issue. Just so I understand the record, as I understand your argument below in response to the prosecution history argument that was made by your friend on the other side, was that the amendment was not narrowing. Correct. But you never argued in the alternative that if, in fact, there was a conclusion by the trial court that the amendment was narrowing or limiting, that you could rebut the presumption that would arise under FESTO. Is that right? That's correct, Your Honor. I don't think that would be necessary because it wasn't a narrowing amendment. Okay. Thank you. Thank you. Well, we're way over time. We'll restore two minutes of rebuttal, which means that we've given you a little bit more than 10 minutes. So we'll add about 10 minutes to your friend's rebuttal that we will not need to use again. Thank you, Your Honor. Thank you. Don't you love that give with one hand, take away with the other? Thank you, Your Honor. So they've pleased the court. The district court's determination in this case should be affirmed. It's clear from the record that no reasonable fact finder could find that this take one device that's been accused of infringement infringes under these particular facts. I'll focus my argument on the removable replaceable transfer member to start with. The removable replaceable transfer member in the claim is very clear. It indicates that there has to be a transfer member, and the transfer member has to have certain components. It has to have a holder, it has to have a needle, and it has to have a seal. And the seal is even further refined in terms of what it has to have. It has to have a bellow shaped part, which is attached to the holder and has a membrane portion that's in the claim says it has to be removable and replaceable. So that modifies what the transfer member has to be. Even assuming we agree with you on some aspects as to what we think a transfer member is, my first question is what is your response to the argument on the other side that disassembly can be the same thing as removal? I think it's incorrect because it's inconsistent with the claim language itself, meaning requiring a collective unit, a removable replaceable transfer member, to then say that actually can just be broken into pieces and we can pick apart and say, oh, we're removing it in three, four, five pieces. We've now removed the transfer member. Seems completely inconsistent with the claim language and completely inconsistent with the patent itself, meaning the whole unit, this closed unit that has this very specific transfer member. And the reason it's a closed system is because what they were inventing, or what they said their inventive concept was, was this idea that they had a closed system so you could actually take out the transfer member and you're still a closed system. You're not going to contaminate anything or anybody as a result of taking it out. So the notion that you could now disassemble it into many different pieces and somehow pick apart those pieces I think is incorrect. I also think that this court's ruling in the HITECH case back in 95 also gets to an issue that they've raised, which is our product is a fully assembled, pre-sterilized, disposable device, meaning it's never intended to be broken apart the way they've done it. And like the HITECH case where they took screws out of it and said, if you take these screws out, all of a sudden this endoscope now rotates and so now you infringe, we submit that similar to that case we have a problem where they've taken apart the product in a way it's never intended to be used and now broken the pieces and say, oh see, we can put these pieces together and somehow find a transfer member. And I think the district court properly held that when you remove it, you make it abundantly clear to the world that you do not have a transfer member. And the reason is because you look at it and they have portions of it on one side of their photo where it says, oh we think this is your holder and here's your needle, and on the other side of the photo all the way over at item 166 is a septum. That septum is, the reason it's all the way over there, is it is chemically bonded to that metal faceplate, meaning the thing that it's actually attached to is that metal faceplate, it's not attached to any of those other pieces. And I think the district court correctly looked at that and said, there's no way that that can be a transfer member and that their removal of it could help demonstrate why in that context it could never be a transfer member. Let's go to DOE on transfer member because this is the part that's giving me the most pause, I think. And that, I mean, I understand that a claimed function, if you're looking at it with a 112-6 lens, is a question of law. But function, way of result, analysis, DOE, they're all questions of fact. And here the lower courts are parsed through the specification and said this is the function. I don't think it ever really said no reason a reasonable jury could find a different function, but I assume that's what he was thinking because this is a summary judgment. But isn't it difficult to say where a claim could serve more than one function, that the trial court should be making that determination at a summary judgment? I don't think so, Your Honor. I think otherwise if a broad rule was applied in that context, you could never have summary judgment of doctrinal equivalence. And I think this court and obviously district courts around the country have clearly found that there are circumstances like this one where it is clear from the record that no reasonable fact finder could find doctrinal equivalence infringement. And so they have argued, middle courts argued that, actually they've argued multiple different functions for the removable replaceable transfer member. And we submit that it wouldn't be appropriate for a patentee to be able to say we can put out there several different functions and simply by making it difficult to decide what the function is, we've created a material fact that you can no longer get. I don't interpret them as saying there are a bunch of alternative functions. What they're saying is that it's broad enough to cover multiple functions, the claim is. And that therefore what the trial court did was import limitations from the specification into the claim by limiting the function to one thing. I don't think so. I think the district court actually took a bunch of functions, including functions that they seem to suggest that are functions of the removable replaceable transfer member. And the part that I think they most object to is the fact that the district court judge talked about in the context of control and contamination. That's the part that they have the most issue with. Now, I think the problem with that argument is even their own expert that they cite to and is in the record when talking about the seal of the transfer member says the function of the seal is to control contamination. And so that is part of the function of the transfer member, meaning the whole point, if you read this patent through from beginning to end, the whole point of this particular device and the transfer member is to avoid contamination. The biggest issue with the prior art was you always have this problem of injecting material into a tank and out of a tank. And what you needed is something that could avoid that by having the sealed unit that allowed you to be able to puncture the membrane, take it out, and always have that. But didn't the trial court essentially require it to avoid contamination in both places? In other words, couldn't it be that it avoids contamination in the larger vessel but not necessarily in the smaller vessel upon removal? I'm not sure. I'm not sure hypothetically whether you could have it one way but not both ways, meaning the way it's designed is to try to ensure you're not contaminating the vessel, but many of these products are also used with very dangerous viruses. So you would never want to be pulling a needle out that later on you could be exposing to the environment and the people who are using it. That's why when Millport disassembled our device, one of our arguments was what you're doing actually is exactly what the prior art was saying is a big problem and what the patent says was the problem is that when you're taking it out, you have now exposed the needle and the sample to contamination from the environment and you've now exposed the environment to the contamination of the sample, which is exactly the opposite of what a disposable device is supposed to do. Can I move you over a little? Still staying on DOE but on the prosecution history of sample argument and their argument with regard to whether or not this was a narrowing or a broadening amendment? Yes, Your Honor. So I think it's clear from this record that it was a narrowing amendment. What they did is they had a claim that had a transfer member in it, but it was a much broader transfer member than the member that they ended up having to amend their claim to get over. So there was a rejection over their original claims. They turned around and said, we will amend the claim. We added limitations as to the transfer member. So now the transfer member had to have all of those component parts that we've talked about, the holder, the needle, the seal, and the seal had to be further limited to include these two ends of the seal, the bellow shape part and the membrane part. So all of that was added into what the transfer member is. So the transfer member was significantly limited by amendment, really narrowed down to what it initially started at. And in addition, the applicant said that as a result of what we've just done by adding in all of these limitations, we are now allowable over the prior art. It didn't make any arguments that its original claims were allowable or that it could distinguish any of the prior art based on its original claim language. It said, we now have done what we think we need to do to make these claims allowable by adding in all these limitations to the transfer member. And they argued that now that we've done that, we are representing to the Patent Office that we now have a patentable device because none of the references, none of the prior art references have a seal formed like the one that they described in their patent, and then they say which is attached to the transfer member. So they were explicitly telling the Patent Office what we've done now is we've modified our transfer member, we've made it much narrower, we've indicated that it's got to be attached to the seal, it has to be attached to the transfer member. That to me seems to be very clear evidence of amendment-based estoppel and argument-based estoppel, both because they tie it all directly to the fact that they needed to do this to get around the prior art. So I submit that. I don't think that there's much ground to argue that this wouldn't create a very clear presumption of estoppel, and below, the only argument that they made was that they didn't narrow the claim. And I think that this record clearly shows that the claim was narrowed. And without any argument as to rebuttal of that presumption, we think the presumption should apply and there should be no equivalence under it. Thank you. The Take One device performs every object that's looked to by the district court that's in the patent. It does prevent contamination of the environment. It does prevent contamination of the sample when it's in operation. It allows for independent operation of the transfer member. It is just the removal of the transfer member that is the issue here, and that was the focus of the district court's decision, and the district court found that that was estoppel. The Honeywell case, Honeywell v. Hamilton, makes clear that the scope of the patentee's concession in making an amendment is determined on a limitation by limitation basis. It necessarily follows, according to that case, that the presumption of surrender applies only to the amended or newly added limitation. There is no surrender of territory as to unamended limitations that were present in the original claim. While the seal was present in the original claim, the only amendment that was made was the rewriting of removable transfer member to removable replaceable transfer member. Therefore, focusing on that limitation and that limitation alone, there was no amendment. In addition, there is nothing in the claim that requires contamination prevention at all. So my friend's focus on that is not related to the issue of prosecution history estoppel. All that was done was to change it from a removable transfer member for replacement after use to removable replaceable transfer member. There's no prosecution history estoppel on that limitation that should apply. Thank you. We thank the Council for the case you submitted.